FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAIZEL BLUMBERGER,

     *Plaintiff-Appellee*,

  v.

IAN B. TILLEY, M.D.,

     *Defendant-Appellant*,

 and

CALIFORNIA HOSPITAL
MEDICAL CENTER; DIGNITY
HEALTH; DOES, 1 through 6 and 7
through 50,

     *Defendants*,

  v.

UNITED STATES OF AMERICA,

     *Movant-Appellee*.

No. 22-56032

D.C. No.
2:22-cv-06066-
FLA-JC

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted November 14, 2023
Pasadena, California

Filed September 9, 2024

Before:  Barrington D. Parker, Jr.,[*] Jay S. Bybee, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Bybee;
Partial Dissent by Judge Desai

## SUMMARY[**]

### Removal / Federally Supported Health Centers Assistance Act

The panel (1) vacated the district court's order remanding Raizel Blumberger's medical malpractice suit against Dr. Ian Tilley to state court; (2) reversed the district court's conclusion that the Attorney General satisfied its advice requirement obligations to the state court under the

---

[*] The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Federally Supported Health Centers Assistance Act (FSHCAA); and (3) held that the government was obligated to remove the case to federal court in accordance with the FSHCAA.

Under the FSHCAA, employees of federally funded health centers can be deemed federal employees of the United States Public Health Service for the purpose of malpractice liability. When a deemed federal employee is sued for medical malpractice for acts or omissions within the scope of his employment, the United States is substituted as the defendant, and the malpractice action proceeds against the government under the Federal Tort Claims Act. 42 U.S.C. § 233(g). If a malpractice suit is filed in state court, the Attorney General must appear within fifteen days of receiving notice of the action pursuant to § 233(*l*)(1), advise the state court whether the defendant is a deemed a federal employee, and if so, remove the case to federal court. If the Attorney General fails to properly appear, the defendant can remove the proceeding.

After Blumberger sued Dr. Tilley for medical malpractice, the Attorney General appeared in state court and notified the court that Dr. Tilley's status as a deemed employee under § 233 was under consideration. One year later, after the Attorney General advised the court that Dr. Tilley was not a deemed employee, Dr. Tilley removed the case under the federal officer removal statute, 28 U.S.C. § 1442, and under § 233(*l*)(1). The district court remanded, finding that Dr. Tilley's removal was untimely under § 1442 and that the Attorney General satisfied its advice obligations under § 233(*l*)(1).

The panel held that the district court analyzed the timeliness of Dr. Tilley's § 1442 removal under the wrong legal standard and remanded on that basis.

Notwithstanding the potential untimeliness of Dr. Tilley's § 1442 removal, the panel determined that it had jurisdiction to review the district court's § 233 analysis. The panel concluded that the Attorney General was obligated under § 233(*l*)(1) to advise the state court that Dr. Tilley had been a deemed employee during the relevant time period. The panel reversed the district court's conclusion that the Attorney General's state-court notice that Dr. Tilley's status was "under consideration" satisfied the requirements of § 233(*l*)(1) and held that the government was obligated to remove the case to federal court. If the Attorney General subsequently determines before trial that Dr. Tilley was not acting within the scope of his employment and therefore was not entitled to malpractice coverage, the Attorney General is free to seek remand to state court. And Dr. Tilley would be entitled to a hearing in a federal court to determine his status.

Judge Desai dissented in part from Section III of the majority's opinion addressing removal under § 233. At bottom, § 233 allows a defendant to remove in only one circumstance—when the Attorney General fails to appear. Because that did not happen here, Dr. Tilley's removal under § 233(*l*)(2) was improper.

## COUNSEL

Matthew S. Freedus (argued), Rosie D. Griffin, and Brendan M. Tyler, Feldesman Leifer LLP, Washington, D.C., for Defendants-Appellants.

Samuel J. Winokur (argued) and Barry B. Novack, Law Offices of Barry Novack, Beverly Hills, California, for Plaintiff-Appellee.

Kevin B. Soter (argued), Dana Kaersvang and Mark B. Stern, Appellate Staff Attorneys, Civil Division; E. Martin Estrada, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney; United States Department of Justice, Washington, D.C.; Ryan C. Chapman, Assistant United States Attorney, Office of the United States Attorney, Los Angeles, California; for Movant-Appellee.

## OPINION

BYBEE, Circuit Judge:

The ultimate issue in this case is simple enough: We are asked to decide whether Plaintiff-Appellee Raizel Blumberger's medical malpractice suit against Defendant-Appellant Dr. Ian Tilley was—or should have been—removed to federal court. Having said that, everything else gets pretty complicated. But "resolving hard cases is part of the judicial job description," *Dubin v. United States*, 599 U.S. 110, 132 n.10 (2023), and "hard interpretive conundrums, even relating to complex rules, can often be solved," *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019).

The solution in this case requires that we consider two statutes dealing with removal to federal court: 28 U.S.C. § 1442 and 42 U.S.C. § 233. We first conclude that the district court's analysis of the timeliness of Dr. Tilley's § 1442 removal proceeded under the wrong legal standard, and we remand on that basis. We then hold that even an untimely § 1442 removal nevertheless confers appellate jurisdiction to review the other bases for the district court's remand order. We reverse the district court's conclusion that the Attorney General's July 26, 2021, notice to the state court that Dr. Tilley's deeming status was "under consideration" satisfied the advice requirement of § 233(*l*)(1). Consequently, we hold that the government was obligated to remove the case to federal court in accordance with § 233(c). We therefore vacate the district court's remand order.

## I.  BACKGROUND

### A. *Statutory Scheme*

The United States Public Health Service (PHS) is a federal uniformed service within the Department of Health and Human Services (HHS). When an employee of the PHS is sued for medical malpractice arising from acts or omissions within the scope of his employment, the United States is substituted as the defendant, and the malpractice action proceeds against the government under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80. *See* 42 U.S.C. § 233(a). This remedy is "exclusive of any other civil action or proceeding," 42 U.S.C. § 233(a), and it "grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment," *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).

To attract medical providers to federally funded health centers, Congress passed the Federally Supported Health Centers Assistance Act (FSHCAA). Under FSHCAA, federally funded health centers and their employees can be "deemed" federal employees of the PHS for the purposes of malpractice liability. *See* 42 U.S.C. § 233(g). The immunity for deemed PHS employees is identical to the immunity for true PHS employees. *See id.* § 233(g)(1)(A). When deemed employees are sued for actions taken within the scope of their employment, the United States is similarly substituted as the defendant and the action proceeds as an FTCA suit. *Id.*; *id.* § 233(a).[1]

---

[1] We have set forth here the relevant portions of 42 U.S.C. § 233:

> (a) Exclusiveness of remedy — The remedy against the United States provided by sections 1346(b) and 2672 of title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

> * * *

> (c) Removal to United States district court; procedure; proceeding upon removal deemed a tort action against United States; hearing on motion to remand to determine availability of remedy against United States; remand to State court or dismissal — Upon a

certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto.  Should a United States district court determine on a hearing on a motion to remand held before a trial on the merit that the case so removed is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State Court . . . .

\* \* \*

(*l*) Timely response to filing of action or proceeding

(1) If a civil action or proceeding is filed in a State court against any entity described in subsection (g)(4) of this section or any officer, governing board member, employee, or any contractor of such an entity for damages described in subsection (a) of this section, the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h) of this section, that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding.  Such advice shall be deemed to satisfy the provisions of subsection (c) of this section that the Attorney General certify that an entity, officer,

To say that "[o]ur inquiry in this case begins and ends with the text of § 233[]," *Hui*, 559 U.S. at 805, understates the task before us. The statutory scheme is enormously complicated. A health center receiving federal funds may file an application with the Secretary of HHS to be "deemed" an employee of the PHS. *See* 42 U.S.C. § 233(g)(1)(A), (D); *see also id.* § 233(h) (setting forth the deeming criteria). Upon approval, the entity—along with its officers, board members, and employees—are deemed PHS employees for one calendar year. *Id.* § 233(g)(1)(A). This deeming status applies with respect to suits initiated by any patient of the entity. *Id.* § 233(g)(1)(B)(i). The Secretary's deeming determination is generally "final and binding upon the Secretary and the Attorney General."[2] *Id.* § 233(g)(1)(F).

---

governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility.

(2) If the Attorney General fails to appear in State court within the time period prescribed under paragraph (1), upon petition of any entity or officer, governing board member, employee, or contractor of the entity named, the civil action or proceeding shall be removed to the appropriate United States district court. The civil action or proceeding shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) of this section and issues an order consistent with such determination.

[2] The statute also provides a mechanism for withdrawing deemed status for employees of a deemed entity prior to any suit being filed. The Attorney General may, in consultation with the Secretary of HHS and after notice and a hearing, determine that an employee of a deemed entity "shall not be deemed an employee of the Public Health Service . . . if

The Secretary's prospective deeming decision, however, does not automatically immunize a covered entity or employee from a particular malpractice suit. Instead, to be eligible for FTCA immunity, the "act or omission [giving] rise to the claim" must also have occurred while the defendant was "acting within the scope of his office or employment." *Id.* § 233(a). Only then must the Attorney General defend a civil action against a deemed employee. *Id.* § 233(b).

Who determines whether a defendant was acting within the scope of his employment and when such determination must be made is at the heart of the controversy before us. When "any person referred to in subsection (a)" is sued, he must deliver "all process served upon him . . . to his immediate superior or to whomever was designated by the Secretary to receive such papers." *Id.* Such notice shall be delivered "promptly." 28 C.F.R. § 15.2(b). The person to whom the defendant delivers that process must in turn "promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary." 42 U.S.C. § 233(b). After receiving notice of a proceeding, the Attorney General may certify "that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose." *Id.* § 233(c). Upon making that certification, if the suit was filed in state court, the Attorney General must remove the case to federal court, which he may do "at any time before trial." *Id.* The federal court may subsequently,

---

treating such individual as an employee would expose the Government to an unreasonably high degree of risk of loss" for certain enumerated reasons. 42 U.S.C. § 233(i)(1).

upon motion to remand, hold a hearing as to whether the case "is one in which a remedy by suit within the meaning of subsection (a) of this section is not available against the United States." *Id.* That is, the court may hold a hearing as to whether the deemed employee was acting within the scope of his employment when he committed the allegedly tortious conduct.

All of this leaves open the possibility that the Attorney General may not be in a position to make a scope-of-employment certification upon receiving notice of the proceeding. It is this possibility that is the subject of the present controversy. If the suit was originally filed in state court, the Attorney General "shall make an appearance" in state court "within 15 days" of receiving notice of the action. *Id.* § 233(*l*)(1). At that appearance, the Attorney General must "advise such court as to whether the Secretary has determined" that the entity or employee "is deemed to be an employee of the Public Health Service . . . with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* If the Attorney General notifies the state court that the Secretary has deemed the defendant a PHS employee with respect to the acts or omissions that gave rise to the suit, that advice "satisf[ies] the provisions of subsection (c) that the Attorney General certify that an entity[] . . . [or] employee . . . was acting within the scope of their employment or responsibility." *Id.* As explained above, an affirmative scope-of-employment certification under subsection (c) obligates the Attorney General to remove the case to federal court. *See id.* § 233(c).

The statute contemplates that the Attorney General might fail to appear within the 15 days prescribed by subsection (*l*)(1). "If the Attorney General fails to appear in State court within" 15 days, the case "shall be removed" to

federal court "upon petition of any entity . . . [or] employee . . . of the entity." *Id.* § 233(*l*)(2). In other words, if the Attorney General fails to make an appearance in state court, the defendant can remove the proceeding to federal court under subsection (*l*)(2) without action by the Attorney General. If the case has been removed by an employee without action by the Attorney General, the state court is deprived of jurisdiction, and the case is stayed until the federal court "conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim." *Id.*

B. *Procedural Posture*

Eisner Pediatric and Family Medical Services (Eisner) is a community health center that receives federal grant funds under 42 U.S.C. § 254b. In 2017, HHS deemed Eisner an employee of the PHS for the 2018 calendar year. The notice also extended deemed status to Eisner's employees—Dr. Ian Tilley among them—for performing medical, surgical, dental, or related functions while acting within the scope of their employment.

On January 3, 2018, Dr. Tilley, an attending physician, and Dr. Jennifer Sternberg, a resident, delivered Raizel Blumberger's baby. At the time, the doctors were working at California Hospital Medical Center, located just blocks from Eisner in downtown Los Angeles. The doctors allegedly "failed to provide proper medical care to address a laceration that occurred during childbirth, and failed to timely suspect, refer, diagnose and treat the wound so as to cause [Blumberger] to suffer pain, suffering and other injuries." Unlike Eisner, California Hospital Medical Center is not federally funded, but the relationship between the two entities is not readily apparent from this record.

The timeline here is of some consequence. Blumberger filed her complaint on May 20, 2021, in California Superior Court. The summons and complaint were served on Dr. Tilley on June 1, 2021. Dr. Tilley answered on July 16, 2021. The answer raised sixteen affirmative defenses, none of which involved his status as a deemed PHS employee. On the record before us, we have no reason to believe that Dr. Tilley was subjectively aware of his deemed status when filing the answer. On July 20, 2021—four days after Dr. Tilley's answer—Eisner notified HHS of the complaint against Dr. Tilley.

The Attorney General, through the local United States Attorney, appeared in state court on July 26, 2021.**[3]** The government notified the state court that "whether Defendant Ian B. Tilley, M.D.[,] is deemed to be an employee of the Public Health Service for purposes of 42 U.S.C. § 233 with respect to the actions or omissions that are the subject of the above captioned action, is under consideration." The Attorney General did not remove the case to federal court. Nearly one year later, on July 21, 2022, the government amended the notice. In relevant part, the notice stated that Dr. Tilley "is *not* deemed to be an employee of the [PHS] . . . with respect to the actions or omissions that are the subject of the above captioned action."

Dr. Tilley putatively removed the case to the U.S. District Court for the Central District of California on August 26, 2022.**[4]** He asserted two bases for removing the case. First,

---

[3] The notice was dated July 22, 2021, but it was stamped "RECEIVED" on July 26, 2021.

[4] Dr. Tilley's counsel attempted to file the notice of removal on August 25, 2022, but encountered difficulties with CM/ECF. The notice was therefore considered filed the following day.

he argued that he was entitled to federal officer removal pursuant to 28 U.S.C. § 1442(a)(1) because he "was acting under Eisner's federal grantor agency, HHS." Second, he argued that removal was proper under 42 U.S.C. § 233(*l*)(2). Dr. Tilley contended that the government's appearance in state court was deficient because the Attorney General was required to advise the state court of Dr. Tilley's positive deeming status for the 2018 year. Dr. Tilley argued that, although the Attorney General was not obligated to appear in state court to affirm whether Dr. Tilley was acting within the scope of his employment, the Attorney General was at least obligated to advise the state court that Dr. Tilley was deemed to be a PHS employee because he was employed by Eisner. Because the Attorney General did not fulfill that obligation, Dr. Tilley argued, the government failed to appear as required under subsection (*l*)(1), thus making defendant-initiated removal proper under subsection (*l*)(2).

The district judge remanded the case. The court found Dr. Tilley's § 1442 removal untimely. It reasoned that Dr. Tilley's purported basis for federal officer removal existed when the complaint was filed in state court, which triggered a 30-day removal clock under 28 U.S.C. § 1446(b)(1). Because the complaint was filed on May 20, 2021, Dr. Tilley's removal more than a year later was untimely. The court similarly rejected Dr. Tilley's basis for removal under § 233(*l*)(2). It explained that under subsection (*l*)(1), the government need only advise the state court as to *whether* the Secretary has made a deeming decision, which the government did here. Put differently, the district court surmised that "removal is improper . . . if the Attorney General appeared within 15 days after being notified of the state court action, even if that appearance was only to advise the court that no determination had yet been made."

Dr. Tilley timely appealed.  Because the propriety of the district court's remand order turns on questions of statutory interpretation, our review is de novo.  *See Ehart v. Lahaina Divers, Inc.*, 92 F.4th 844, 849 (9th Cir. 2024); *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009).

## II.  SECTION 1442 AND APPELLATE JURISDICTION

As complicated as parsing § 233 may be, we have one matter to attend to first:  our own appellate jurisdiction.  In general, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal."  28 U.S.C. § 1447(d).  However, "an order remanding a case to the State court from which it was removed pursuant to section 1442 . . . shall be reviewable by appeal or otherwise."  *Id.*  Crucially, the Supreme Court has held that when removal was effectuated *in part* pursuant to § 1442, an appellate court possesses jurisdiction to review the entire remand order—not only those components pertaining to § 1442.  *BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1538 (2021) ("Here, everyone admits the defendants' notice of removal . . . cit[ed] § 1442 as one of its grounds for removal.  Once that happened and the district court ordered the case remanded to state court, the whole of its order became reviewable on appeal.").

These rules give rise to two threshold questions.  First, was Dr. Tilley's § 1442 removal untimely?  Second, if so, is the case still one "removed pursuant to section 1442" such that we retain appellate jurisdiction over the rest of the remand order?  28 U.S.C. § 1447(d).  We conclude that the district court applied the wrong legal standard in answering the first question, so we remand on this issue to resolve certain factual uncertainties.  Notwithstanding the uncertainty about the timeliness of Dr. Tilley's § 1442

removal, we conclude that we still have appellate jurisdiction to review the entire remand order, including the district court's § 233 holding. We take these issues in turn.

A. *Whether Dr. Tilley's § 1442 Removal Was Timely*

A case is removable under § 1442 if the "party seeking removal [can] demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citation omitted). Section 1446(b) provides the rules governing the timeliness of removal. The default rule is that the party seeking removal must remove "within 30 days after the receipt . . . of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). But "if the case stated by the initial pleading is not removable," a party may remove a case within 30 days "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

Was the case stated by Blumberger's initial pleading removable under § 1442? We think not. The 30-day clock under § 1446(b)(1) begins to run "only when that pleading affirmatively reveals *on its face* the facts necessary for federal court jurisdiction." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (per curiam) (emphasis added) (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 691–92 (9th Cir. 2005)). Our decision in *Dietrich v. Boeing Co.*, 14 F.4th 1089 (9th Cir. 2021), provides a clarifying example in the context of federal officer removal. There, the plaintiff sued Boeing, alleging that she had been exposed to asbestos when her family members were in the

employ of the company. "[H]er family members were exposed to asbestos through Boeing's work for the United States military," but the complaint did not mention this relationship—"a connection that would have alerted Boeing to a possible basis for removal to federal court under the federal officer removal statute." *Id.* at 1091. The court therefore concluded that "Dietrich's initial complaint d[id] not set forth a ground for removal," *id.* at 1093, even though Boeing likely could have discovered this connection from a review of its own records.

As in *Dietrich*, the face of the complaint before us does not allege sufficient facts to alert Dr. Tilley to his potential basis for removal based on his relationship with HHS. The complaint does not mention Eisner at all, let alone its status as a deemed PHS entity. Instead, the complaint suggests that Dr. Tilley was employed by California Hospital Medical Center, which was not a federally funded entity. Nothing in the record suggests that Dr. Tilley was subjectively aware of Eisner's (and therefore, his) deemed status when the complaint was filed on May 20, 2021; it seems implausible that if Dr. Tilley was aware of his deemed status, he would have chosen not to raise it as one of his sixteen affirmative defenses in filing his answer. Instead, it appears to us that Dr. Tilley was oblivious to his potential claim to § 233 immunity as an Eisner employee—and thus the potential for federal officer removal based on his relationship with HHS—until the government first appeared in state court on July 26, 2021. By that point, in accordance with § 233(b), Eisner had informed the Secretary of HHS of the suit, and HHS had advised the Attorney General. The district court thus erred in analyzing the timeliness of Dr. Tilley's § 1442 removal under § 1446(b)(1) instead of § 1446(b)(3).

Starting the 30-day clock under § 1446(b)(3) is more difficult than under § 1446(b)(1).  *See Dietrich*, 14 F.4th at 1093 (recognizing that § 1446(b)(3) "seems to require a greater level of certainty or that the facts supporting removability be stated *unequivocally*" (citation omitted)). The clock runs only upon receipt of a "paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  We have held that "an amended pleading, motion, order, or other paper must make a ground for removal unequivocally clear and certain" to trigger § 1446(b)(3)'s temporal limitation. *Dietrich*, 14 F.4th at 1095.  This is a high bar, for good reason.  It avoids bad-faith gamesmanship by "preventing plaintiffs from strategically starting the removal clock without the defendants' realization."  *Id.* at 1094.

The government's July 26, 2021, state-court notice provided anything but "unequivocally clear and certain" support for removal under § 1442.  The government's notice was definitionally indeterminate, stating that Dr. Tilley's deemed status "with respect to the actions or omissions that are the subject of the above captioned action[] is under consideration."  Because the government's notice did not say that Dr. Tilley was a deemed PHS employee, Dr. Tilley could not have been certain from the government's notice alone whether the Secretary had deemed him a PHS employee for the 2018 calendar year.  Perhaps that should have clued Dr. Tilley to investigate his status further—after all, the government's notice referenced § 233 explicitly and implied that Dr. Tilley might be "deemed to be an employee of the Public Health Service."  But we have "emphasized that a defendant does not have a duty of inquiry if the initial pleading or other document is indeterminate with respect to

removability." *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) (citation and quotation marks omitted).

Nor do we think the government's subsequent notice that Dr. Tilley was *not* deemed a PHS employee is "unequivocally clear and certain" to support § 1442 removal. To the contrary, the government's adverse decision that Dr. Tilley was not so deemed suggests that Dr. Tilley did not qualify for § 1442 removal because he was not acting under the direction of a federal officer and is unable to assert a viable federal defense. Even more, it did not notify Dr. Tilley with any certainty that he was deemed a PHS employee for the 2018 calendar year. Of course, it was at this point that Dr. Tilley first learned with near certainty that the government would not remove the case on his behalf. But that is a far cry from notice that a "*ground for removal was unequivocally clear and certain.*" *Dietrich*, 14 F.4th at 1095 (emphasis added). And even if Dr. Tilley *should* have removed at this point, he was not necessarily *obligated* to do so within 30 days of receiving the government's adverse notice. *Cf. id.* at 1094 (distinguishing "facts sufficient to *allow* removal with facts sufficient to *require* removal within thirty days").

Left with only the foregoing, we might have been inclined to conclude that Dr. Tilley's § 1442 removal was timely. We have recognized that "the defendant may remove at any time" "as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable." *Rea*, 742 F.3d at 1238; *accord Kenny*, 881 F.3d at 791. But we think there may be some "other paper" that makes Dr. Tilley's asserted ground for removal unequivocally clear and certain: HHS's 2017 notice deeming Eisner a PHS entity for the 2018 calendar year. This paper may satisfy § 1446(b)(3)'s requirements. In

particular, the document makes clear that Eisner is deemed a PHS entity for the 2018 year and that "[c]overage extends to deemed entities and their . . . full- and part-time employees." Because Dr. Tilley's § 1442 removal rests entirely on his status as an employee of a deemed PHS entity, HHS's notice provides unequivocally clear and certain support for Dr. Tilley's contention that he was acting "pursuant to a federal officer's directions" when treating Blumberger and that there is a "colorable federal defense" pertaining to the medical malpractice claims. *Durham*, 445 F.3d at 1251 (citation omitted).

It is not clear from the record before us whether and when Dr. Tilley received the deeming notice; in fact, the record is not clear as to when Dr. Tilley learned of his deemed status in the first place. We therefore remand to the district court to determine when Dr. Tilley's 30 days under § 1446(b)(3) began to run, if at all. If it determines that Dr. Tilley's § 1442 notice was timely, then the district court should proceed to decide whether Dr. Tilley was an "officer (or any person acting under [an] officer) of the United States or of any agency thereof." 28 U.S.C. § 1442(a)(1); *see generally Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907 (9th Cir. 2024). We express no view on the merits of this question.

B. *Whether We Have Appellate Jurisdiction to Review the § 233 Ruling Even If Dr. Tilley's § 1442 Removal Was Untimely*

Dr. Tilley argues that even if his § 1442 removal was untimely, we still have appellate jurisdiction to review the district court's § 233 ruling. This is an issue of first impression, and we conclude that we can review the remainder of the district court's order.

Section 1447(d) governs our jurisdiction to review a remand order. The provision precludes appellate review of a remand order, "except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). In other words, we may review a remand order if removal occurred "pursuant to section 1442." *Id.* And as the Supreme Court held in *BP*, a removal pursuant to § 1442 confers appellate jurisdiction to review the *entire* remand order—not only the components of that order arising out of the federal officer removal. 141 S. Ct. at 1538. The question, then, is whether an untimely removal under § 1442 is nevertheless a case "removed pursuant to section 1442" within the meaning of the statute.

We start with § 1446(d). That section provides: "Promptly after the filing of such notice of removal of a civil action[,] the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal." 28 U.S.C. § 1446(d). At that point, the case is removed, "and the State court shall proceed no further unless and until the case is remanded." *Id.* The first clause of this subsection provides a timing rule: After filing a notice of removal in federal court, the defendant must promptly give notice to adverse parties and the state court. The actions in the second clause describe what "shall effect the removal"—that is, the dissemination of notice to the adverse parties and the filing of a copy of the notice with the clerk of the state court.

Satisfying the notice requirements of § 1446(d) does not, of course, guarantee that the removed case will remain in federal court. Section 1447(c) provides for remand on the

basis of "any defect," including timeliness. *See id.* § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."). The time limit in § 1446 is "merely a formal and modal requirement and is not jurisdictional." *Friedenberg v. Lane County*, 68 F.4th 1113, 1121 (9th Cir. 2023) (quoting *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014)). For that reason, a failure to raise timeliness as an issue forfeits an objection to this procedural defect. A procedural defect may affect the federal court's subsequent decision to remand, but it does not change the fact that satisfying the notice requirements removes the case in the first place. The cases and commentary are clear that even temporary removal is removal, and "[t]he jurisdiction of the state court over the action is immediately ousted and the federal court assumes jurisdiction for all purposes." Moore's Fed. Prac. § 1446.2[4], at 653 (2023 ed.) (citation omitted); *see Resol. Tr. Corp. v. Bayside Devs.*, 43 F.3d 1230, 1238 (9th Cir. 1994) ("Thus, the clear language of the general removal statute provides that the state court loses jurisdiction *upon the filing of the petition for removal*." (emphasis added)); Moore's Fed. Prac., *supra*, § 1447.2[2][a], at 655 ("[R]emoval is effected automatically by the filing of the notice of removal. If the federal court later determines that the removal was improper, remand under § 1447(c) is the statutory procedure by which the action is returned to the state court."); *cf. Brooks v. Liberty Life Assurance Co. of Bos.*, 937 F.3d 1144, 1145 (8th Cir. 2019) ("And the federal statute is clear: removal is effective upon 'fil[ing] a copy of the notice [of removal] with the clerk of [the] State court,' regardless of how state law might treat the notice after it is

filed." (alterations in original) (emphasis omitted) (quoting 28 U.S.C. § 1446(d))).

The Supreme Court's decision in *BP* supports our conclusion. The Court there considered, among other issues, the circumstances under which a case is removed pursuant to § 1442(a)(1). The majority opined that the removal "statute requires the defendant to provide affected parties and courts with a notice stating its grounds for removal. §§ 1446(a), (d). The combination of these actions 'effect[s] the removal.' § 1446(d)." *BP*, 141 S. Ct. at 1538 (alteration in original). Conspicuously, the Court cited only § 1446(a) and (d) as the precondition to effecting removal, rather than referencing the timeliness requirements in § 1446(b). The Court continued, "To remove a case 'pursuant to' § 1442 or § 1443, then, *just means* that a defendant's notice of removal must assert the case is removable 'in accordance with or by reason of' one of those provisions." *Id.* (emphasis added) (footnote omitted). "Once that happened and the district court ordered the case remanded to state court, the whole of its order became reviewable on appeal." *Id.* *BP* thus confirms that comporting with the procedures of § 1446(a) and (d) removes the case to federal court; nothing more is required.

Beyond the opinion's express reasoning, the logic of *BP* similarly supports our interpretation. *BP* supposed that there might be improper § 1442 removals that nevertheless confer appellate jurisdiction to review the other components of the remand order. *See id.* at 1542–43 (discussing frivolous § 1442 removals). The Court also suggested that "a court of appeals [might] find[] the § 1442 or § 1443 issue a difficult and close one, but believe[] removal is clearly and easily warranted on another basis." *Id.* at 1542. This necessarily contemplates appellate jurisdiction even when a case was not

properly removed under § 1442. Adopting a contrary reading would render *BP* pure dicta in its entirety: If a proper § 1442 removal was required to confer appellate jurisdiction over the entire remand order, an appellate court would have no need to consider the other grounds for removal on appeal, as § 1442 would already supply a permissible basis for removal. If § 1442 removal was improper, the court would have no appellate jurisdiction, including jurisdiction to consider the other bases for removal. The only way to make sense of *BP* is to acknowledge that there might be some instances when the § 1442 basis for removal is infirm but the court of appeals nevertheless retains jurisdiction to review the whole remand order.

We recently applied this logic to a similar set of circumstances in *Friedenberg*. The defendants sought removal on both § 1442 and § 233 grounds, but the § 1442 removal was untimely. The plaintiffs, however, "failed to raise their timeliness objection within the statutory 30-day deadline." *Friedenberg*, 68 F.4th at 1121. We concluded that they had waived their objection and that the case had therefore been removed pursuant to § 1442. Accordingly, we had appellate jurisdiction to review the defendants' § 233 arguments. *See id.* at 1124. Here, of course, the government *did* object to the untimeliness of the § 1442 removal. But for the reasons we have already explained, that merely preserved the possibility for remanding on timeliness grounds—it did not alter the fact that the case had been removed pursuant to § 1442 for the purposes of establishing our appellate jurisdiction.

We are not oblivious to the policy-laden concerns espoused by the government in response. The government fears strategic gamesmanship insofar as "defendants might

seek to remove cases like this one at any point" under an untimely § 1442 removal for the sole purpose of preserving appellate jurisdiction over the entire remand order. But such policy arguments cannot—and should not—change our conclusion here. First, "the statute tempers its obvious concern with efficiency when it comes to cases removed pursuant to § 1442 . . . . For that subset of cases, Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP*, 141 S. Ct. at 1542. Second, Congress has already crafted deterrents to frivolous invocations of § 1442, including by allowing "a district court [to] order a defendant to pay the plaintiff's costs and expenses (including attorney's fees) if it frivolously removes a case from state court. Additionally, the Federal Rules of Civil Procedure allow courts to sanction frivolous arguments made in virtually any context." *Id.* at 1542–43. Third, these policy concerns cannot trump the text of the statute; "[t]o the extent that . . . these other measures [are] insufficient, Congress is of course free to revise its work anytime. But that forum, not this one, is the proper place for such lawmaking." *Id.* at 1543. Finally, the other bases for removal still need to be timely. Otherwise, the appellate court will simply not reach the substantive validity of any other basis for removal when reviewing the entire remand order.

In sum, we conclude that we have appellate jurisdiction to wade into the § 233 dispute notwithstanding any untimeliness in Dr. Tilley's § 1442 removal.

### III.  SECTION 233

At last, we return to the thicket of § 233. It is hardly a model of clarity, so we proceed with caution in addressing this central question:  Was the Attorney General required

under § 233(*l*)(1) to inform the state court of Dr. Tilley's deemed status for 2018, such that the government was obligated to remove the case to federal court?[5]  We answer in the affirmative.  In Part III.A, we show why the text of the statute compels this conclusion.  In Part III.B, we explain how our interpretation also finds support in the presumption of judicial review.  In Part III.C, we consider what remedy Dr. Tilley has—if any—to enforce the government's removal obligation.

A.  *Text of § 233*

Section 233(*l*)(1) instructs the Attorney General to appear in state court within 15 days of receiving notice of an action against a deemed employee.  In making that appearance, the Attorney General must "advise [the state] court as to whether the Secretary has determined under subsections (g) and (h), that such entity . . . [or] employee . . . is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding."  42 U.S.C. § 233(*l*)(1).  All parties agree that if the Attorney General advises the state court in the affirmative, "[s]uch advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an . . . employee . . . was acting within the scope of their employment," *id.*, which in turn requires the Attorney General to remove the action to federal court, *id.* § 233(c).

---

[5] Our dissenting colleague implies that this question is not properly before us on appeal.  *See* Dissent at 55–56, 59.  We believe it is.  The parties extensively briefed whether the Attorney General's notice was sufficient under § 233(*l*)(1), and, as a corollary, whether the Attorney General was obligated to remove the case.  The issue was also raised repeatedly at oral argument.

The action proceeds as a "tort action brought against the United States" under the FTCA. *Id.* Once the case has been removed, the district court may conduct a hearing on a motion to remand filed by any party. *Id.*

The parties dispute precisely what the advice required by subsection (*l*)(1) demands of the Attorney General. Dr. Tilley urges us to focus on the phrase "whether the Secretary has determined . . . that such . . . employee . . . is deemed to be an employee of the Public Health Service." On Dr. Tilley's reading of § 233(*l*)(1), the Attorney General was obligated to advise the state court that the Secretary had deemed Dr. Tilley to be a PHS employee during 2018 and should have removed the case to federal court on that basis pursuant to § 233(c). The government and Blumberger contest this reading, instead focusing on the phrase "deemed . . . with respect to the actions or omissions that are the subject of such civil action or proceeding." In their view, this advice requirement is a de facto scope-of-employment certification, but one made by the Secretary and not the Attorney General.

Unfortunately, "both sides have tendered plausible constructions of a text . . . [that is] far from clear." *De Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). The answer lies somewhere in the middle, but it is closer to Dr. Tilley's position. In the end, we conclude that subsection (*l*)(1) requires the Attorney General to provide positive advice to the state court when the employee was deemed for the time period at issue and the lawsuit arises out of a class or category of medical conduct for which the employee was deemed.

Our analysis of the text proceeds in three parts. We first reiterate the distinction between the Secretary's prospective

deeming decision and the Attorney General's ex-post coverage determination. Then, we explain why § 233(*l*)(1)'s reference to "the actions or omissions that are the subject" of the lawsuit refers to the general categories of conduct for which a person may be deemed under § 233(g). We conclude by showing the error of treating § 233(*l*)(1) as a de facto scope-of-employment decision.

1. "Deemed" vs. "covered"

Before addressing § 233(*l*)(1) itself, we must reiterate a distinction between a "deemed" employee and a "covered" employee. That distinction runs throughout FSHCAA and is key to unlocking the statute's meaning. An employee's "deemed" status is a prospective decision made by the Secretary of HHS to treat the employee as if he were an employee of the PHS. *See* 42 U.S.C. § 233(g)(1)(A). The deeming decision is made before any litigation is filed; it is an ex-ante determination made on a yearly basis as to an employee's status. *Id.* "Once the Secretary makes a determination that an . . . employee . . . of an entity is deemed to be an employee of the Public Health Service for purposes of this section, the determination shall be final and binding upon the Secretary and the Attorney General . . . ." *Id.* § 233(g)(1)(F).

Being deemed a PHS employee, however, does not automatically entitle the employee to immunity from suit. Deemed PHS employees—like regular PHS employees— receive immunity only from actions that occurred "within the scope of [their] office or employment at the time of the incident out of which the suit arose." *Id.* § 233(c). The "scope of employment" determination is the Attorney General's to make. *Id.*; *see also* 28 U.S.C. § 2679(d)(1) (similar). Only certain actions or omissions are therefore

"covered." *See Coverage*, Black's Law Dictionary (12th ed. 2024) ("Inclusion of a risk under an insurance policy," and "is often used interchangeably with *insurance* or *protection*."). We repeat: "Deemed" and "covered" are different determinations made by different department heads. The first denotes whether the Secretary has determined that a qualified entity's employees have PHS status for a "calendar year." 42 U.S.C. § 233(g)(1)(A). The second, whether the Attorney General has determined that a PHS employee was acting within the scope of his employment "at the time of the incident out of which the suit arose." *Id.* § 233(c).

The division of labor that Congress has made between the Secretary (who determines an entity's deemed status) and the Attorney General (who determines an employee's coverage status) reflects the unique expertise of the two actors. HHS possesses comparative expertise in administering healthcare policies and services. *See*, *e.g.*, *Goffney v. Becerra*, 995 F.3d 737, 746 (9th Cir. 2021) (recognizing HHS's "core expertise . . . [in] the administration of the Medicare program"). In administering FSHCAA, the agency draws from that expertise when deciding whether to deem an entity a PHS employee. Before approving a deeming application, the Secretary must have "reviewed and verified professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners," 42 U.S.C. § 233(h)(2), and he must ensure that the entity "has implemented appropriate policies and procedures to reduce the risk of malpractice," *id.* § 233(h)(1). The Attorney General, by contrast, possesses expertise in litigation involving the United States. He is charged with vindicating

the interests of the United States in court and defending the public fisc; indeed, FSHCAA tasks the Attorney General with "defend[ing] any civil action or proceeding brought in any court against any person" covered by the statute. *Id.* § 233(b). The Attorney General is intimately familiar with the legal doctrine governing scope of employment in tort cases. *See id.* § 233(c); *see also*, *e.g.*, 28 U.S.C. § 2679(c) ("The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government . . . ."). The different actors are tasked with different responsibilities, reflecting their different expertise. The Secretary makes the ex-ante deeming decision by relying on his public health expertise; the Attorney General makes the ex-post scope-of-employment certification by relying on his experience defending the United States's interests in court. The logic of the statute depends on policing the boundaries between the Secretary's deeming decision and the Attorney General's coverage determination.

The Third Circuit's recent nonprecedential decision in *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2024) (nonprecedential), illustrates the dangers of eliding this distinction. There, the Third Circuit rejected an argument by Centerville Clinic that, "because it was a 'deemed' PHS employee under § 233 when the events giving rise to this action occurred, it ha[d] the right to remove and removal under § 233(*l*)(1) should be automatic upon the Attorney General's appearance." *Id.* at *2. The court accused Centerville of "misread[ing] the statute" by "conflating the Attorney General's prior deeming determination with its specific coverage determination." *Id.* But as we have emphasized, the *Secretary*—not the Attorney General—makes the prior deeming determination. Indeed, the Secretary's deeming determination is binding on the

Attorney General.  *See* 42 U.S.C. § 233(g)(1)(F).  Congress understood the difference between the Secretary's decision deeming a facility qualified under § 233(g)(1)(A) and the Attorney General's litigation-specific decision under § 233(c) that a deemed employee was covered with respect to a particular incident.  The Attorney General's ex-post scope-of-employment determination is relevant to whether the defendant is ultimately covered—not whether the defendant has been deemed.  As we explain next, § 233(*l*)(1) obligates the Attorney General to report on the Secretary's deeming decision, not to report the Attorney General's ultimate coverage decision.

> 2.  Section 233(*l*)(1) refers to enumerated categories of medical conduct

With the important distinction in mind between being deemed and being covered, we now consider § 233(*l*)(1).  Many of the traditional tools of statutory interpretation we have at our disposal point in different directions when applied to § 233(*l*)(1).  The weight of textual support for each side, however, is not in equipoise; the statute's text and structure generally favor a reading of subsection (*l*)(1) that requires the Attorney General to advise the state court whether the employee was deemed a PHS employee by the Secretary for the relevant time period and was providing the categories of medical services for which he was deemed.

To start, the statute's operative language focuses on the Secretary's ex-ante deeming decision—not the Attorney General's ex-post coverage decision.  Subsection (*l*)(1) requires the Attorney General to report "whether the Secretary has determined under subsections (g) and (h)" that the employee is "deemed" to be a PHS employee.  42 U.S.C. § 233(*l*)(1).  As we have explained, "deemed" is a value-

laden term in the context of FSHCAA, referring to the decision by the Secretary to treat certain entities as PHS employees for a calendar year.  Subsection (*l*)(1)'s cross-references to subsections (g) and (h) confirm as much, referring expressly to the provisions of FSHCAA governing the Secretary's prospective deeming decision.  *See*, *e.g.*, *id.* § 233(g)(1)(A) ("[S]ubject to the approval by the Secretary . . . [an employee] shall be deemed to be an employee of the Public Health Service for a calendar year . . . .").

The Secretary's ex-ante deeming decision applies with respect to certain categories of acts or omissions.  The statute imbues the phrase "actions or omissions" with a particular meaning.  Full- and part-time employees are deemed with respect to "the performance of medical, surgical, dental, or related functions."  *Id.* § 233(a).  Part-time *contractors*, however, are deemed only with respect to "services in the fields of family practice, general internal medicine, general pediatrics, or obstetrics and gynecology."  *Id.* § 233(g)(5)(B).  A full-time heart surgeon at a deemed entity is deemed even with respect to dental functions.  If she performs a root canal on a patient and is sued for medical malpractice arising from that procedure, she is *deemed* with respect to the acts or omissions giving rise to the suit— although she might not be *covered* if she was acting beyond the scope of her employment as a heart surgeon.  If the heart surgeon is a part-time *contractor* of the entity, she would neither be deemed nor covered with respect to the dental procedure.  The Secretary's prospective deeming decision thus applies with respect to only certain classes of acts or omissions, which may differ depending on one's employment status.

*Friedenberg* corroborates this reading of the statute. There, "Plaintiffs alleged negligence and wrongful death

claims against Defendants for violating their duty to report a court-ordered . . . patient's refusal to comply with the medical terms of his probation." 68 F.4th at 1118. The defendants removed the action to federal court, claiming § 233 immunity as deemed PHS employees. *Id.* The district court rejected their immunity argument, reasoning that the defendants' deemed status applies only with respect to plaintiffs who are also patients of the deemed entity. *Id.*

We reversed. Although we were not construing the scope of § 233(*l*)(1), we noted that "§ 233 immunity does not turn on who brings the claim, but rather whether the conduct giving rise to the claim arose out of the Defendants' performance of 'medical, surgical, dental, or related functions.'" *Id.* at 1125–26 (quoting 42 U.S.C. § 233(a)). We continued, "the statute contemplates the types of actions for which deemed PHS employees are covered . . . . [T]he claim must result from the performance of these services." *Id.* at 1126; *see also id.* at 1127 ("[D]eemed PHS employees are entitled to immunity from claims resulting from providing 'medical, surgical, dental, or related' services to 'patients' . . . ." (quoting 42 U.S.C. § 233(a), (g)(1)(B)); *id.* ("[A]s long as a claim is derived from providing services to subjects of the healthcare provider, the deemed PHS employee is immune from suit."). Reading *Friedenberg* in combination with § 233(*l*)(1) confirms that the Attorney General must notify the state court whether the defendant was deemed during the relevant time period and whether the complaint arises out of the performance of services listed in § 233(a) (for all employees and full-time contractors) or § 233(g)(5)(B) (for all part-time contractors).

Section 233(i) bolsters our conclusion that "actions or omissions" is a categorical status that relates to the effect of the ex-ante deeming decision. "Notwithstanding

subsection (g)(1)"—the prospective deeming section—the Attorney General may, in consultation with the Secretary, categorically exclude an employee from the PHS-deemed status of his employer "if treating such individual as such an employee would expose the Government to an unreasonably high degree of risk of loss." *Id.* § 233(i)(1). Having made such a determination, the Attorney General notifies the employee, and the exclusion "appl[ies] only to *acts or omissions* occurring after the date such notice is received." *Id.* § 233(i)(2) (emphasis added). In this context, "acts or omissions" is tethered to the class of services for which the employee was previously deemed. It is not a synonym for scope of employment but is instead a categorical, forward-looking phrase.

It is through this lens that we understand subsection (*l*)(1)'s phrase, "deemed . . . with respect to the actions or omissions" giving rise to the lawsuit. A defendant satisfies these requirements if he was deemed for the relevant time period and was providing services for which § 233 would supply immunity. In those cases, the Attorney General is required to provide positive notice to the state court. The Attorney General may reply in the negative if the acts or omissions identified in the complaint fall outside the category of services for which the defendant is deemed, such as a part-time contractor sued for negligent dental care. The Attorney General may also reply in the negative if the defendant was not deemed for the time period encompassing the relevant acts or omissions. We note that the "with respect to the actions or omissions" language will most often apply in cases involving part-time contractors, because their § 233 immunity is limited to specific categories of services. Full- and part-time employees, however, are generally covered for all "medical, surgical, dental, or related functions," *id.*

§ 233(a), so when a plaintiff brings a medical malpractice suit against an employee for actions that occurred during the deemed time period, the "actions or omissions" limitation will play almost no role.[6]

3. Section 233(*l*)(1) does not entail a scope-of-employment determination

The Attorney General advances a contrary reading of the statute, urging that the phrase "with respect to the actions or omissions that are the subject of [the] civil action or proceeding" is equivalent to a scope-of-employment assessment, but one made by the Secretary. We decline to adopt this reading for several reasons.

First, we apply "the meaningful-variation canon." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022) (citing Antonin Scalia & Bryan A. Garner, Reading Law 170 (2012)). Section 233 uses the phrase "scope of employment" in several places. *E.g.*, 42 U.S.C. § 233(a), (c), (f). We assume this variation in language was intentional and that Congress did not intend to treat "actions or omissions" synonymously with "scope of employment." Significantly, the phrase "scope of employment" is used in § 233(*l*)(1), but it does not appear in the first sentence, which governs notice to the state court. Instead, it appears in the

---

[6] Our reading does not render this language superfluous, contrary to the dissent's suggestion, *see* Dissent at 63–64, because the provision still does substantial work in cases involving part-time contractors. Regardless, "even if there is some surplusage, the [Supreme] Court has stated that '[r]edundancy is not a silver bullet' when interpreting statutes." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 649 (2022) (second alteration in original) (citation omitted). Particularly in a statute of this complexity, "some degree of statutory redundancy is not unusual." *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1204 (9th Cir. 2022).

second sentence: "Such advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an [entity or employee] was acting within the scope of their employment or responsibility." Reading these two sentences together, when the Attorney General advises the state court of the deemed status of the employee, "[s]uch advice shall be *deemed*" to mean that the employee was acting within the scope of his employment. *Id.* § 233(*l*)(1) (emphasis added). The advice is not itself a final determination that the employee was acting in the scope of his employment. He is simply deemed to be such. *See Sturgeon v. Frost*, 139 S. Ct. 1066, 1081 (2019) (noting that "deemed" creates a useful legal fiction to treat "something to be what it is not" (citation omitted)); *Deem*, Black's Law Dictionary (7th ed. 1999) ("To treat (something) as if . . . it were really something else."). It is a rebuttable presumption, a categorical consequence of the Secretary's deeming decision, and is subject to the Attorney General's further inquiry. The Attorney General may certify "at any time" that the defendant was acting within the scope of his employment, or the Attorney General may move in the federal district court to remand the case "on the merit that the case so removed is one in which a remedy by suit within the meaning of subsection (a) . . . is not available against the United States." 42 U.S.C. § 233(c). In contrast to the Secretary's deeming decision, the question of scope of employment is one that the Attorney General must make. *Id.*

Our dissenting colleague concedes that there is meaningful variation between the phrases "actions or omissions" and "scope of employment." *See* Dissent at 65. The inference she draws runs in the opposite direction, however; she suggests that "actions or omissions" includes several components, including scope of employment. *See*

*id.* For support, Judge Desai points to 42 C.F.R. § 6.6(c), which provides, "With respect to covered individuals, only acts and omissions within the scope of their employment . . . are covered." It is tempting to read this regulation as embedding the scope of employment certification within the phrase "acts and omissions." *See* Dissent at 63–64. But we must resist that temptation lest we conflate distinct concepts and phrases. The statute speaks of people who are "*deemed* . . . with respect to the actions or omissions that are the *subject of such civil action or proceeding*." 42 U.S.C. § 233(*l*)(1) (emphasis added). The regulation speaks to "*covered* individuals," 42 C.F.R. § 6.6(c) (emphasis added), not *deemed* individuals. Those phrases have different meanings. Indeed, the statute uses the phrase "covered person" elsewhere, but not in § 233(*l*)(1). *See*, *e.g.*, 42 U.S.C. § 233(p)(1), (p)(7)(B). A covered individual has immunity from suit. But as we have explained, mere deeming status does not guarantee coverage. The regulation also defines the phrase "[*c*]*overed* acts and omissions," *id.* § 6.6 (emphasis added), not "actions or omissions that are the subject of" the lawsuit, 42 U.S.C. § 233(*l*)(1). A person might be *deemed* with respect to the actions that give rise to the lawsuit and yet not be *immune* because only actions within the scope of employment are *covered*.

Second, and relatedly, the information the Attorney General must give is "whether *the Secretary* has determined" the deemed status of the employee under subsection (g). *Id.* § 233(*l*)(1) (emphasis added); *see id.* § 233(g)(1)(A). As explained above, that refers to the ex-ante deeming decision made by the Secretary of HHS. The government's reading presupposes an additional deeming decision by the Secretary—one that occurs after litigation has commenced and applies with respect to the "actions or omissions" giving

rise to the suit. The dissent adopts that view, too, by suggesting that the phrase "acts or omissions" *includes* as a necessary component a scope of employment certification. *See* Dissent at 65. The statute, however, nowhere provides for such an ex-post deeming decision by the Secretary, only an ex-post scope-of-employment certification by the Attorney General in subsection (c). 42 U.S.C. § 233(c). Because subsection (*l*)(1) cross-references the Secretary's prospective deeming decision, we are satisfied that it does not create some sort of additional decision by the Secretary.

For that reason, *Allen v. Christenberry*, 327 F.3d 1290, 1295 (11th Cir. 2003), has little to offer us here. The Attorney General and Blumberger cite *Allen* for the proposition that "[t]he statute does not provide for removal upon notification that no decision has been reached yet." *Id.* at 1295. The dissent follows their lead, reading *Allen* to foreclose our conclusion that the Attorney General was obligated to remove this case. *See* Dissent at 58. But *Allen* involved a unique set of circumstances not present here. The Secretary had received a deeming application by the doctors, but it had not yet made an ex-ante deeming determination by the time the lawsuit was filed. The notice HHS sent to the doctors instead "stated that the Secretary of HHS was still considering whether to deem them employees of the PHS. . . . [N]o decision had been made as of that date." *Allen*, 327 F.3d at 1295. The Attorney General appeared within fifteen days of the lawsuit, but it "did not advise the court of any determination by HHS, because none had been made as of that time." *Id.* at 1294. *Allen* says nothing about whether the statute contemplates an ex-post deeming decision by the Secretary, nor does it say anything about whether the statute authorizes removal even when the

Attorney General has not made a final decision about scope of employment.

Third, that the statute allots only 15 days for the Attorney General to make an appearance and give the required advice after receiving notice of the suit weighs against the Attorney General's construction of § 233. That is a very compressed timeframe in which to make a full-blown scope-of-employment assessment. Such a requirement would obligate the Attorney General to receive notice of the case from HHS, conduct a full-blown investigation into the circumstances of the suit (which would include identifying and interviewing witnesses, reviewing employment contracts, and gathering other documents), render a scope-of-employment determination, communicate that decision to the Secretary of HHS, wait for the Secretary's decision, and then ultimately advise the state court of the Secretary's determination. Even if such expediency were possible, it makes more sense to construe § 233(*l*)(1) as requiring a simple up-down certification to the state court that the defendant has been deemed a PHS employee for the time period in question with respect to the category of services identified in the complaint. That requires access to only two documents—the deeming notice issued by HHS and the complaint. The Attorney General then has time to decide whether the deemed employee was acting within the scope of his employment, and he may argue to the federal district court upon removal that the case should be remanded because the conduct at issue fell outside the scope of the defendant's employment. *See id.* § 233(c).

Fourth, it makes sense that Congress would have placed the onus for notifying the state court on the Attorney General and not on the Secretary or the employee. If the United States is to be substituted in for the employee, the Attorney

General is responsible for defending the PHS in court, not the Secretary.  Moreover, in many cases, the employee will likely be unaware of his deemed status at the time the suit is filed.  Even if the medical center ultimately corresponds with the Secretary of HHS, the employee may be entirely oblivious to his status and the entity's communication.  The Attorney General's notice of the employee's deemed status serves to advise not only the state court, but also the employee, of the potential for § 233 immunity.

These principles are on full display in this case.  Eisner notified the Secretary of HHS of the suit against Dr. Tilley, and the Secretary notified the Attorney General.  Within 15 days, the Attorney General was obligated to advise the state court whether the Secretary had deemed Dr. Tilley to be a PHS employee during 2018 and whether the complaint arose out of "the performance of medical, surgical, dental, or related functions."  This was a simple up-or-down decision. It was a question of Dr. Tilley's legal status.  In this case, the question of Dr. Tilley's status could be answered by looking at the "Notice of Deeming Action" issued by HHS's Health Resources and Services Administration (HRSA), and the complaint.  HRSA issued the notice on August 11, 2017, to Eisner.  The notice covered Eisner and its employees from January 1 to December 31, 2018, and recited that it was issued pursuant to 42 U.S.C. § 233(g)–(n).  The notice further stated that it covered Eisner's employees "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions."   And the complaint clearly states that Blumberger's cause of action arose out of conduct that is medical or surgical in nature, alleging that Dr. Tilley "negligently failed to provide proper medical care."

Despite the clarity of those documents, the Attorney General failed to give the state court notice in July 2021 that Dr. Tilley had been deemed a PHS employee during 2018 and was providing medical services of the type for which he might enjoy immunity from malpractice liability. Instead, the Attorney General advised the state court that Dr. Tilley's deemed status was "under consideration." A year later, in July 2022, the Attorney General provided an amended notice to the state court. This time, it misleadingly advised the state court that Dr. Tilley was "*not* deemed to be an employee of the Public Health Service for purposes of 42 U.S.C. § 233 with respect to the actions or omissions that are the subject of the above captioned action." We assume that the notice meant to state that Dr. Tilley was not acting within the scope of his employment at the time of the incident out of which the suit arose. *See* 42 U.S.C. § 233(c). But, as discussed, the Attorney General need only have confirmed that Dr. Tilley had been deemed and that the lawsuit arose out of a category of covered services.

To be clear, nothing in the statute precludes the Attorney General from *also* reporting its coverage determination to the state court, even simultaneously with the § 233(*l*)(1) advisal to the state court that an employee has been deemed. There is nothing inappropriate with the Attorney General reporting in the same notice both its own litigation-related coverage decision and the Secretary's prospective deeming decision. But it is an employee's deemed status, not covered status, that triggers the removal provisions of § 233(*l*)(1). Any advice the Attorney General may give to the state court about its ultimate coverage decision has no legal consequence—one way or another—under § 233(*l*)(1). So, if the Attorney General advises that the defendant was deemed with respect to the actions or omissions giving rise

to the suit but that the defendant was not acting within the scope of his employment, removal is necessary. The Attorney General may then seek "a hearing on a motion to remand," *id.* § 233(c), arguing "that the case so removed is one in which a remedy by suit within the meaning of subsection (a) . . . is not available," *id.*, because the defendant was not "acting within the scope of his office or employment," *id.* § 233(a). In this case, the Attorney General could have advised that Dr. Tilley was deemed—but not covered[7]—with respect to the actions or omissions giving rise to the lawsuit. The Attorney General would then have had to remove the case under § 233(c), but it could have sought remand by arguing that Dr. Tilley was not acting within the scope of his employment during the allegedly tortious conduct. But as we have discussed, the Attorney General blended the two inquiries, inaccurately reporting Dr. Tilley's deemed status when it intended to report its ultimate coverage determination.

The dissent claims that our "interpretation is impractical" by "compel[ling] the Attorney General to replace a defendant and remove a case even when the defendant is obviously not covered." Dissent at 66. Even if those concerns were relevant in our interpretive endeavor, we believe the dissent's fears are overblown. If the "even when the defendant obviously is not covered," *id.* at 66, a party may decide not to oppose remand to the state court. In those cases, there are costs to opposing remand. "An order remanding the case may require payment of just costs and actual expenses, including attorney fees," if a party

---

[7] We express no view as to whether Dr. Tilley was acting within the scope of his employment, or otherwise covered, with respect to the actions or omissions giving rise to the lawsuit.

baselessly opposes the government's motion to remand. 28 U.S.C. § 1447(c); *see also BP*, 141 S. Ct. at 1542. And "the Federal Rules of Civil Procedure allow courts to sanction frivolous arguments made in virtually any context." *BP*, 141 S. Ct. at 1543. Regardless, although the dissent is correct that our interpretation may lead to certain inefficiencies, our sole "task is to discern and apply the law's plain meaning as faithfully as we can, not 'to assess the consequences of each approach and adopt the one that produces the least mischief.'" *Id.* (citation omitted).

In sum, the Attorney General did not give the state court timely notice of the Secretary's decision, as required by § 233(*l*)(1). Had it done so, the Attorney General would have been obligated to remove the case to federal court. If the Attorney General subsequently determined before trial that Dr. Tilley was not acting within the scope of his fictive PHS employment, the Attorney General was free to seek remand to state court. *Id.* § 233(c). And Dr. Tilley would have been entitled to a hearing in a federal court to determine his status. *Id.*

## B. *The Presumption of Reviewability*

A contrary reading of the statute would effectively insulate the Attorney General's deeming advice to the state court—and the ultimate decision not to certify scope of employment—from judicial review. If subsection (*l*)(1) allows the Attorney General to advise in the negative because it decides that the employee was not acting within the scope of his employment, the employee has no meaningful forum in which to challenge the government's failure to certify scope of employment.

There are a number of reasons why we should decline a reading of FSHCAA that would deprive an employee of a

federal hearing to determine his status.  First, FSHCAA itself contemplates a federal forum for resolving any disputes over the employee's PHS status.   It expressly provides for a federal hearing in two instances.   First, if the Attorney General removes the case from state court to federal district court, the court may conduct "a hearing on a motion to remand."  *Id.* § 233(c).  Second, if the Attorney General fails to appear in state court, the defendant-employee may remove the case and the district court must conduct a hearing and make "a determination[] as to the appropriate forum."  *Id.* § 233(*l*)(2).  We are reluctant to read into FSHCAA a path by which the Attorney General can avoid a federal forum for such a hearing.

The dissent (at 68–69) and government point out, properly, that the Westfall Act provides expressly for a hearing in the event that the Attorney General refuses to certify scope of employment for federal employees who are sued.  *See* 28 U.S.C. § 2679(d)(3) ("In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment.").  The dissent and government also point out, again correctly, that FSHCAA contains no such explicit provision, and so, they argue, we should assume that Congress meant to preclude judicial review of refusal-of-coverage decisions under § 233.

The narrow construction of § 233 by reference to § 2679(d)(3) is plausible, but it is not so unequivocally clear as to overcome the Supreme Court's strong presumption in favor of judicial review.  The case most directly on point is *De Martinez v. Lamagno*, 515 U.S. 417 (1995), which involved a challenge to the status of a federal employee

under the Westfall Act. In 1991, Dirk Lamagno, a Drug Enforcement Administration agent, collided with Katia De Martinez's car in Colombia—allegedly while Lamagno was intoxicated. Because Lamagno enjoyed diplomatic immunity from suit in Colombian courts, De Martinez filed a diversity action in U.S. District Court for the Eastern District of Virginia. *Id.* at 420–21. In relevant part, like FSHCAA, the Westfall Act authorizes the Attorney General to certify that an employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). If the Attorney General so certifies, the United States is substituted as the defendant, the employee is dismissed from the action, and the case then proceeds as an FTCA action against the government. *See De Martinez*, 515 U.S. at 419–20.

In Lamagno's case, the Attorney General certified that Lamagno was acting within the scope of his employment at the time of the accident. *Id.* at 421. This certification would have been fatal to De Martinez's tort claim because the FTCA's waiver of sovereign immunity contains an exception for claims arising in a foreign country. *See* 28 U.S.C. § 2680(k). So, if the United States were substituted as the defendant, De Martinez would have been "left without a tort action against any party." *De Martinez*, 515 U.S. at 420. De Martinez therefore sought judicial review of the Attorney General's scope-of-employment certification.

The Supreme Court ultimately held the scope-of-employment certification judicially reviewable. To begin, the Court recognized that "Congress did not address this precise issue unambiguously, if at all," and that the statute was "open to divergent interpretation." *Id.* at 424; *see id.* at 434 ("[B]oth sides have tendered plausible constructions of a text most interpreters have found far from clear."). But it

recognized a "strong presumption that Congress intends judicial review" of such decisions. *Id.* at 424 (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)). The Court emphasized that "when a Government official's determination of a fact or circumstances—for example, 'scope of employment'—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable." *Id.* It elaborated, "we have stated time and again that judicial review of executive action 'will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)). Nothing in the text or history of the Westfall Act indicated that Congress intended "to make the Attorney General's delegate the final arbiter of 'scope-of-employment' contests." *Id.* at 425.

The Supreme Court's rationale rejected a negative-implication argument similar to the one raised here by the government and dissent. *See* Dissent at 68–69. In particular, the Westfall Act provides expressly that an "*employee* may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679 (emphasis added). The Westfall Act contains no comparable provision authorizing an aggrieved *plaintiff* to petition a court for review of the Attorney General's refusal to certify scope of employment. Relying on the weighty presumption in favor of reviewability, the Court repudiated the notion that Congress meant to exclude, by negative implication, a plaintiff from seeking judicial review merely because the statute provides unambiguously for one specific form of review.

*De Martinez* is not a perfect analogue, but it sets forth principles that are directly applicable here. In *De Martinez*,

the Attorney General had an incentive to certify affirmatively Lamagno's scope of employment; doing so would have triggered sovereign immunity, thereby shielding its employee Lamagno from personal tort liability and without cost to the United States.  Here, the Attorney General has an incentive *not* to make an affirmative scope-of-employment certification for the same reason—certifying Dr. Tilley's scope of employment would potentially subject the government to tort liability.  And that incentive seems far stronger in the instant case than in Lamagno's case.  Here, the government may be liable for the ultimate judgment; in *De Martinez*, the government would not have been directly subject to liability if Lamagno was not acting within the scope of his employment.

As the dissent correctly observes, the Attorney General's decision to certify or not to certify Dr. Tilley's scope of employment would not be entirely dispositive of the action, unlike in *De Martinez*.  *See* Dissent at 68–69.  Blumberger's tort action would simply proceed against Dr. Tilley rather than against the government, so the scope-of-employment decision matters considerably less to the medical malpractice plaintiff here than it did in *De Martinez*. Someone will have to respond to Blumberger's claims.  But *De Martinez* and this case represent two sides of the same coin: a scope-of-employment certification would essentially be dispositive of Dr. Tilley's immunity from suit as a PHS employee.   If the Attorney General made a positive certification, the United States would be substituted as the defendant, shielding Dr. Tilley from personal liability altogether.  We do not in any way impugn the integrity of the Attorney General or his representatives who must make scope-of-employment decisions.  But the Attorney General has a duty to defend federal employees who are acting in the

scope of their employment and, otherwise, to defend the
public fisc by denying the responsibility of the United States.

*De Martinez* instructs us to "adopt the reading that
accords with traditional understandings and basic principles:
that executive determinations generally are subject to
judicial review." 515 U.S. at 434. If Congress intended "to
commit the critical 'scope-of-employment' inquiry to the
unreviewable judgment of the Attorney General or her
delegate, and thus to alter fundamentally the answer to the
'who decides' question," we would expect Congress to do so
clearly. *Id.* at 426. But if one thing about § 233 is plain, it
is that Congress did not plainly commit this inquiry to the
unreviewable judgment of the Attorney General.

The government's and dissent's argument about the
express review provision in the Westfall Act gives us pause,
but it does not change our bottom line for two reasons. First,
"[t]he force of any negative implication . . . depends on
context." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017)
(quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381
(2013)). We are instructed to "assume[] that, when Congress
enacts statutes, it is aware of th[e Supreme] Court's relevant
precedents." *Bartenwerfer v. Buckley*, 598 U.S. 69, 80
(2023). *De Martinez*, which was decided six months before
§ 233(*l*)(1) was enacted, reiterated the Court's 1986
declaration that "federal judges traditionally proceed from
the 'strong presumption that Congress intends judicial
review.'" 515 U.S. at 424 (citation omitted); *see also* Pub.
L. No. 104-73, 109 Stat. 780. Put another way, Congress
emphasized a default rule (judicial review), which Congress
could alter only by clear statutory command. *See id.* at 424–
25. Congress could have repeated the Westfall Act's express
review provision here; great clarity would have followed.
But in light of the Court's recent presumption in favor of

judicial review, Congress could well have understood that federal courts would review the scope of employment determination unless Congress specified otherwise. Accordingly, had Congress wanted to depart from that default rule in FSHCAA, it would have done so in unambiguous language, not "the statutory fog we confront here." *Id.* at 425.

Second, and following closely from the last point, Congress *is* unequivocal when it intends to override the presumption of judicial review. For example, when dealing with HHS's Provider Reimbursement Review Board, Congress stated in no uncertain terms that "[t]he determinations and other decisions described in section 1359ww(d)(7) of this title shall not be reviewed by the Board or by any court." 42 U.S.C. § 1395*oo*(g)(2); *see also*, *e.g.*, 26 U.S.C. § 6038A(4)(B) ("[S]uch determination by the Secretary shall be binding and shall not be reviewed by any court."); *cf.*, *e.g.*, 26 U.S.C. § 7436 ("A decision entered in any proceeding conducted under this subsection shall not be reviewed in any other court . . . ."). So, although the negative-implication canon offers some support to the dissent's reading, "this principle ('*expressio unius est exclusion alterius*') can be employed as easily to support the opposite interpretation." *United States v. Ray*, 375 F.3d 980, 990 (9th Cir. 2004). Forced to choose between two negative implications, we are reluctant to disturb what we view as the better reading of § 233(*l*)(1)—that Congress *did* in fact provide for a hearing on scope of employment, albeit in a more convoluted way than in § 2679. That conclusion is consistent with the principles underlying *De Martinez*.

Because the force of the negative implication is relatively weak, the dissent charts another path to avoid the *De Martinez* presumption: positing that judicial review

remains available to Dr. Tilley in state court or an APA action.  *See* Dissent at 70.  Neither suggestion withstands scrutiny.  A state-court hearing is unavailing for several reasons.[8]  Nothing in the text of § 233 authorizes such a state court hearing, unlike § 2679(d)(3).  A state-court hearing might also be at odds with federalism and supremacy principles.  Precedent sharply cabins a state court's ability to interfere with the operation of federal administrative power.  *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 691 n.13 (1997); *Hancock v. Train*, 426 U.S. 167, 178 (1976).  It is hardly surprising, then, that federal district courts have "exclusive jurisdiction" over tort actions against the United States.  28 U.S.C. § 1346(b)(1).  Allowing a state court to require the substitution of the United States as a defendant by overriding the Attorney General's decision not to certify scope of employment runs headlong into that exclusive federal jurisdiction requirement.

The possibility of APA review fares no better and raises more questions than answers.  Is the Attorney General's advice to the state court a final agency action for purposes of the APA?[9]  And if the APA were an adequate avenue for

---

[8] At oral argument, the government suggested that it had no opposition to state-court review of the Attorney General's decision not to certify scope of employment.  In papers filed with the state court, however, the government *did* express opposition:  "Unlike the Westfall Act . . . 42 U.S.C. § 233 contains no provision that specifically authorizes a deemed PHS employee to petition a state court for a scope of employment certification after denial by the Attorney General."  Dkt. No. 52 Ex. B at 2.  We grant Tilley's requests for judicial notice, Dkt. Nos. 52 & 53, of the state-court filings relevant to this case.  *See* Fed. R. Evid. 201(b)(2).

[9] We have no need to answer that question today, but at least one of our district court colleagues has answered in the negative.  *See Pediatric & Fam. Med. Found. v. U.S. Dep't of Health & Hum. Servs.*, No. 17-CV-732, 2017 WL 8220596, at *7 (C.D. Cal. July 6, 2017).

judicial review, why did the *De Martinez* Court make no mention of it when applying the presumption of reviewability?  Moreover, for those who care about the policy consequences of our decision, an APA action would create greater inefficiency than it solves.  In all likelihood, it would require a simultaneous, collateral proceeding.  Would the state-court suit be stayed in the interim?  Could the state-court plaintiff participate in the APA action?  Would collateral estoppel limit the arguments that could be made in one forum or the other?[10]  Must the APA action proceed in the District of Columbia?

In the end, we are satisfied that our reading of § 233(*l*)(1) is correct as a textual matter and comports with the Supreme Court's admonition that we should construe such provisions in favor of judicial review of scope-of-employment decisions.

C. *The Appropriate Remedy to Enforce the Government's Removal Obligation*

The Attorney General was obligated to advise the state court in the affirmative of Dr. Tilley's deemed status with respect to the relevant actions or omissions, so it was also

---

[10] The dissent's reliance on *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265 (D.C. Cir. 2005), is misplaced.  There, the D.C. Circuit considered whether the statute's removal provisions create a cause of action to challenge a negative ex-ante deeming decision—*i.e.*, the Secretary's decision not to *prospectively* and *categorically* deem all the entity's physicians employees of the PHS under § 233(g)(1)(A).  An APA action, the court reasoned, exists to challenge HHS's prospective deeming decision.  *See id.* at 1272–73.  But *El Rio* says nothing about the availability of the APA to challenge the Attorney General's failure to certify scope of employment once litigation against a handful of deemed employees has begun.

obligated to remove the case to federal court. *See* 42 U.S.C. § 233(*l*)(1) (noting that such advice shall be deemed to satisfy § 233(c)'s scope-of-employment certification); *id.* § 233(c) (requiring removal by the Attorney General upon certification that the defendant was acting within the scope of his employment).

In most cases, the Attorney General would be able to satisfy this removal requirement "at any time before trial." *Id.* § 233(c). Going forward, we trust that the Attorney General will act in good faith to remove cases as expeditiously as possible to avoid unnecessary delay, expense, and uncertainty. Upon removal, the Attorney General, defendant, or plaintiff can move within 30 days to remand the case on the basis that Dr. Tilley was not acting within the scope of his employment.

In this case, however, the government should have provided affirmative advice to the state court in July 2021, within 15 days of receiving notice of the suit against Dr. Tilley. Instead, it stated that Dr. Tilley's status was "under consideration," and then nearly one year later, it advised the state court that Dr. Tilley was *not* deemed a PHS employee with respect to the actions or omissions giving rise to this suit. This was incorrect, but it is hard to fault the government; before our decision today, the advice requirement of § 233(*l*)(1) was subject to different interpretations, each one plausible. Given the significant time that has passed since the government should have advised the state court of Dr. Tilley's status, we choose to vacate the district court's order remanding the lawsuit to state court and we remand this case to the district court for further proceedings consistent with § 233. *See* 28 U.S.C. § 2106 ("[A] court of appellate jurisdiction may . . . remand the cause and . . . require such further proceedings to be had

as may be just under the circumstances."); *cf.*, *e.g.*, *United States v. Bacon*, 979 F.3d 766, 769–70 (9th Cir. 2020) (en banc) (applying the discretion afforded to appellate courts when fashioning remand remedies). The district court should, upon a timely motion to remand, hold a hearing to determine whether "the case so removed is one in which a remedy by suit within the meaning of subsection (a) . . . is not available against the United States . . . ." 42 U.S.C. § 233(c). At that hearing, the United States is free to contest whether Dr. Tilley was acting within the scope of his employment vis-à-vis the alleged acts of negligence.

In light of our disposition, we decline to consider whether Dr. Tilley's removal under § 233(*l*)(2) was improper, but nothing in Part I of Judge Desai's dissent casts doubt on our conclusions above. We similarly decline to consider whether the Attorney General's July 2021 notice to the state court was so inadequate that we should consider the notice a failure to appear for purposes of § 233(*l*)(2). Nor do we decide whether, even if § 233(*l*)(2) removal was available to him, Dr. Tilley was required to remove on that basis within 30 days of the government's deficient state-court notice. *See* 28 U.S.C. § 1446(b)(3).

## IV. CONCLUSION

To summarize, we vacate the district court's order as to the § 1442 removal and remand for the district court to determine when Dr. Tilley first knew of his deemed status for the 2018 year and when he first received the deeming notice. The district court should then assess the timeliness of Dr. Tilley's § 1442 removal under the § 1446(b)(3) standard. If the district court concludes that Dr. Tilley's § 1442 removal was timely, it should decide whether Dr.

Tilley was acting under a federal officer for purposes of § 1442.

Notwithstanding the potential untimeliness of Dr. Tilley's § 1442 removal, we have jurisdiction to review the district court's § 233 analysis.  We conclude that the Attorney General was obligated under § 233(*l*)(1) to advise the state court that Dr. Tilley had been deemed a PHS employee with respect to the actions or omissions giving rise to the lawsuit.  We reverse the district court's conclusion that the Attorney General's July 26, 2021, state-court notice satisfied the requirements of § 233(*l*)(1).  The Attorney General should have removed the case in July 2021 or shortly thereafter.

We thus vacate the district court's remand order.  "The district court shall enter an order recalling the remand and shall notify the Los Angeles County Superior Court that the district court has resumed jurisdiction over the action." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021).  We remand the case for proceedings consistent with this opinion.  *See* 28 U.S.C. § 2106.  Each party shall bear its own costs.

**REVERSED in part, VACATED in part, and REMANDED.**

DESAI, Circuit Judge, dissenting in part:

I respectfully dissent from Section III of the majority's opinion addressing removal under 42 U.S.C. § 233.[1] A state court action may be removed under § 233 in only two circumstances: (1) the Attorney General can remove the case after certifying that a "defendant was acting in the scope of his employment at the time of the incident" giving rise to the suit, 42 U.S.C. § 233(c), or (2) a defendant can remove the case if the Attorney General "fails to appear" in state court "within the time period prescribed" in § 233(*l*)(1), 42 U.S.C. § 233(*l*)(2). Neither happened here. The Attorney General appeared in state court within the time period prescribed in § 233(*l*)(1), but he did not certify that Dr. Tilley was acting in the scope of his employment at the time of the incident giving rise to Blumberger's malpractice suit. Thus, the answer to the only question on appeal concerning § 233— whether Dr. Tilley properly removed the case to federal court—is no.

The majority circumvents this otherwise unavoidable conclusion by addressing an entirely different question: "Was the Attorney General required under § 233(*l*)(1) to inform the state court of Dr. Tilley's deemed status for 2018, such that the government was obligated to remove the case to federal court?"[2] Maj. Op. at 25–26. The majority

---

[1] I agree with the majority that it is unclear on this record whether Dr. Tilley's 28 U.S.C. § 1442 removal was timely, but even an untimely § 1442 removal gives us appellate jurisdiction to review Dr. Tilley's § 233 removal.

[2] The majority claims this question is properly before us because the "parties extensively briefed whether the Attorney General's notice was sufficient under § 233(*l*)(1)." Maj. Op. at 26 n.5. But the parties discussed the sufficiency of the Attorney General's notice when

manufactures this inquiry because it fears that answering the question presented will lead to gamesmanship in future cases if the Attorney General timely appears in state court but fails to certify that the defendant was acting in the scope of his employment. The majority is not wrong to fear such potential consequences, but we cannot rewrite the language of the statute to protect against the possibility of unfortunate results. Beyond that, the majority's holding will lead to absurd and impractical results and unduly burden the government. Indeed, the majority plucks the word "deemed" from § 233(*l*)(1) and reads it in isolation to create a per se removal rule every time a PHS employee is sued for medical malpractice, even if the employee was acting outside the scope of his employment. The majority's approach erases language from § 233, eliminates the Attorney General's role under the statute, and gives a procedural advantage to doctors in malpractice cases that belong in state court. I cannot go along with this approach.

## I.    Dr. Tilley's removal under § 233(*l*)(2) was improper.

The sole question before us regarding § 233 is whether Dr. Tilley properly removed the case. I would hold that he did not. Under § 233(*l*)(1), the Attorney General must appear within fifteen days and advise the state court whether the Secretary has deemed the defendant a PHS employee "with

---

addressing whether *Dr. Tilley* properly removed under § 233(*l*)(2) based on the Attorney General's alleged failure to appear under § 233(*l*)(1). That is the question I address in Section I below, and one the majority never confronts. It expressly "decline[s] to consider" whether the Attorney General's "notice to the state court was so inadequate that we should consider the notice a failure to appear for purposes of § 233(*l*)(2)" or whether "Dr. Tilley's removal under § 233(*l*)(2) was improper." Maj. Op. at 53. Indeed, the majority sidesteps the question presented in this case in lieu of one that can produce the majority's favored result.

respect to the actions or omissions that are the subject of such civil action or proceeding." "If the Attorney General fails to appear in State court within the time period prescribed under paragraph (1), upon petition of any entity or officer, governing board member, employee, or contractor of the entity named, the civil action or proceeding shall be removed to the appropriate United States district court." 42 U.S.C. § 233(*l*)(2).

In July 2021, the Attorney General timely appeared and advised the state court that whether Dr. Tilley was "deemed" a PHS employee "with respect to the actions or omissions that are the subject of the above captioned action" was "under consideration." A year later, the Attorney General updated this notice and advised the court that Dr. Tilley was "*not* deemed" a PHS employee "with respect to the actions or omissions that are the subject of the above captioned action."

Dr. Tilley then removed under § 233(*l*)(2). He argued the Attorney General "failed to appear" under § 233(*l*)(1) when he first advised the court that Dr. Tilley's coverage status was still "under consideration."[3] In Dr. Tilley's view, the Attorney General must *definitively* advise the court whether Dr. Tilley is covered the first time the Attorney General appears in state court. Not so. Subsection (*l*)(1) requires only that the Attorney General appear in court within fifteen days after being notified of the filing and advise the court "whether" the government has made a coverage determination. The Attorney General did just that: he

---

[3] Dr. Tilley also argued the Attorney General "failed to appear" because he should have advised the court that Dr. Tilley was covered based solely on his status as an Eisner employee. But as discussed below, the Attorney General was not required to do so.

advised the state court that the coverage determination was "under consideration."

Section 233 allows a defendant to remove only if the Attorney General fails to appear within the time prescribed. It does not allow removal if the Attorney General appears and advises the court that the defendant is *not* covered. 42 U.S.C. § 233(*l*)(2); *see El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005). Nor does it allow "removal upon notification that no decision has been reached yet." *Allen v. Christenberry*, 327 F.3d 1290, 1295 (11th Cir. 2003). In *Allen*, the Eleventh Circuit held that the defendant doctors' removal was improper because, as here, "[t]he Attorney General *did* appear . . . to give notice that no decision had been made," yet "the defendant doctors themselves removed the case to federal court, something the statute does not permit." *Id.* (emphasis added). The majority contends that *Allen* "has little to offer us here" because the Secretary "had not yet made an ex-ante deeming determination by the time the lawsuit was filed." Maj. Op. at 38. But just as the Secretary had deemed Eisner a PHS entity here, in *Allen* the Secretary had deemed the health center a PHS entity, and the doctors were contractors of the health center. *Allen*, 327 F.3d at 1292. The majority assumes that, because Dr. Tilley was an Eisner employee and Eisner had received a deeming notice, removal is a foregone conclusion. The Eleventh Circuit reversed the district court for making the same assumption in *Allen*. *Id.* at 1293, 1295 (rejecting the district court's view that the case "should have been removed by the Attorney General" because the doctors "were contractors [of a deemed health center] entitled to the protections of 42 U.S.C. § 233").

At bottom, § 233 allows a defendant to remove in only one circumstance—when the Attorney General fails to appear. Because that did not happen here, Dr. Tilley's removal under § 233(*l*)(2) was improper.

## II. The majority's manufactured remedy for Dr. Tilley's improper removal under § 233 is unsupported.

The majority never addresses whether Dr. Tilley's removal under § 233(*l*)(2) was proper. The only answer to that question is no, and that should end our inquiry under § 233. But instead of deciding that question, the majority invents a solution for Dr. Tilley's improper removal by concluding that the Attorney General should have removed the case. Even if that were an issue properly before us, the majority's conclusion is unsupported. The text of § 233(*l*)(1) did not compel the Attorney General to advise the state court that Dr. Tilley's status as a "deemed" employee extended to the conduct alleged in the lawsuit. The majority's holding to the contrary distorts the statute's text, renders much of the statute superfluous, assumes facts not before us, and is impractical. And a general policy favoring judicial review of agency decisions cannot save the majority's flawed interpretation.

### A. The text of § 233 did not compel the Attorney General to remove.

Section 233(*l*)(1) requires that the Attorney General advise the state court whether the Secretary has deemed the defendant a PHS employee "with respect to the actions or omissions that are the subject of such civil action or proceeding." This advice to the court also satisfies § 233(c), which allows the Attorney General to certify that the defendant was acting in the scope of his employment during the incident giving rise to the complaint. The Attorney

General's advice under § 233(*l*)(1) is thus tied to the specific conduct alleged in the complaint—it tells the state court whether the alleged conduct falls under the defendant's § 233(a) coverage as a "deemed" PHS employee.

Indeed, while the Secretary makes a prospective decision deeming a person eligible for § 233 coverage, that coverage is limited in many ways that depend on the facts in the lawsuit. The coverage applies only to injuries "resulting from the performance of medical, surgical, dental, or related functions" by a person "acting within the scope of his office or employment." 42 U.S.C. § 233(a). And the person's acts or omissions must involve services to the health center's patients (or non-patients if certain criteria are met) and must relate to the health center's grant-supported activities. 42 U.S.C. § 233(g)(1)(C); 42 C.F.R. § 6.6(c), (d).

In other words, the Secretary's prospective deeming notice is only a precondition to the government's ultimate decision to grant coverage. But whether a particular employee's acts or omissions are indeed covered can be determined only after the lawsuit is filed. Consider a dentist employed by a deemed health center who "moonlights" as a plastic surgeon for private clients on the weekends. *See* Health Res. & Servs. Admin., HHS, *Federal Tort Claims Act: Health Center Policy Manual*, at 8 (explaining that coverage does not extend to "moonlighting" activities, defined as "professional activities outside of covered entity employment responsibilities and is not within the covered entity's approved scope of project"). If a state court plaintiff sued the dentist for performing negligent dental work at the health center, the Attorney General likely must appear and remove the case. § 233(c), (*l*)(1). But if a plaintiff sued the dentist for a botched surgery performed during his moonlighting activity, § 233(*l*)(1) allows the Attorney

General to advise the court that the employee was not deemed a PHS employee "with respect to the actions or omissions that are the subject of" the lawsuit. Under the majority's new rule, the Attorney General no longer makes a coverage decision, and removal is required under both scenarios.

Here, the Secretary deemed Eisner a PHS employee for calendar year 2018. Consistent with § 233(a), the deeming notice stated that it covered Eisner for injuries "resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment," and the coverage "extend[ed] to" Eisner's officers, employees, and certain contractors. The notice did not specify whether any contracts or other criteria would permit coverage for services provided to non-Eisner patients. *See* 42 C.F.R. § 6.6(c), (d); § 233(g)(1)(C). Blumberger did not sue Eisner. She sued Dr. Tilley—an Eisner employee—for services he performed at a different, non-federally funded hospital. As the majority concedes, we do not know the circumstances of Dr. Tilley's work at the other hospital or whether Eisner required him to provide those services. Maj. Op. at 12 (noting that "the relationship between the two entities is not readily apparent from this record"). We only know that the government ultimately determined that Dr. Tilley was *not* deemed a PHS employee "with respect to the acts or omissions" in this lawsuit.

The majority fails to grapple with any of this. It instead concludes that the Attorney General must do no more than point to the piece of paper deeming Eisner a PHS entity, certify that any Eisner employee performing any medical services for any patient is covered, and remove the case to federal court. That is not what the statute requires.

First, the majority's interpretation would render much of § 233 meaningless. If the Attorney General must step in and remove every medical malpractice case when the defendant is employed by a deemed PHS entity, then what is the point of subsections (c) or (*l*)(1)? There would be no reason for the Attorney General to advise the court whether the defendant has been "deemed" an employee "*with respect to the actions or omissions*" alleged in the case, § 233(*l*)(1) (emphasis added), nor would there be any reason for the Attorney General to certify that the defendant was acting within the scope of his employment, § 233(c). The majority all but concedes this. Maj. Op. at 35 (noting that, under its interpretation, the "acts or omissions" clause in subsection (*l*)(1) "will play almost no role" for employees). "Under accepted canons of statutory interpretation, we must make every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir. 2013) (cleaned up). Yet the majority's interpretation of § 233(*l*)(1) does just that.

My colleagues spill much ink distinguishing the Secretary's "ex-ante" *deeming* decision from the Attorney General's "ex-post" *coverage* decision. Maj. Op. at 28–31. This distinction does not support the majority's reading of the statute. Although the Secretary makes a prospective decision deeming PHS employees eligible for § 233 coverage, subsection (*l*)(1) asks the Attorney General to advise the court whether that prior deeming decision extends to "the actions or omissions that are the subject of [the] civil action or proceeding." That is, the Attorney General must review the facts in the complaint and decide whether the alleged conduct falls within the scope of the Secretary's decision deeming the defendant eligible for § 233 coverage.

The majority contends that the Third Circuit's recent unpublished opinion in *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164, at *1 (3d Cir. Aug. 6, 2024) "illustrates the dangers of eliding [the] distinction" between the Secretary's deeming decision and the Attorney General's coverage decision. Maj. Op. at 30. Just the opposite. The Third Circuit interpreted the plain text of § 233 and understood the difference between the prior "deeming" decision and the specific coverage decision under subsection (*l*)(1). It correctly explained that "[a] prior annual determination under § 233(g) that [the defendant] is deemed a PHS employee—perhaps made well before the conduct related to the suit occurred—cannot satisfy § 233(*l*)(1)'s requirement that the government's coverage determination account for the specifics of the conduct related to the pending lawsuit." *Id.* at *2. The majority's contention that subsection (*l*)(1) refers only to the pre-litigation deeming notice and does not allow the Attorney General to make a case-specific coverage decision cannot be squared with the language of the statute.

Second, the majority reads the "acts or omissions" clause in § 233(*l*)(1) far too narrowly. The majority contends that "acts or omissions" refers only to whether the conduct alleged in the lawsuit involves "medical, surgical, dental, or related functions." 42 U.S.C. § 233(a). But that is only one component of § 233 coverage. A health center's coverage extends only to employees who are, among other things: performing medical, dental, or surgical services; providing services that relate to the health center's grant-funded activities; treating the health center's patients unless certain criteria are met; and acting within the scope of their employment. 42 U.S.C. § 233(a), (g)(1); 42 C.F.R. § 6.6(b)–(d). The "acts or omissions" at issue in the lawsuit must

satisfy these criteria for the Secretary's deeming decision to cover the defendant. Section 233's implementing regulations bolster this interpretation. In a section titled "Covered *acts or omissions*," the regulations list these separate components of § 233 coverage. 42 C.F.R. § 6.6 (emphasis added).

An example highlights the problem with reading "acts or omissions" as narrowly as the majority suggests. One coverage requirement is that the employee's acts or omissions must occur "on [or] after the effective date of the Secretary's" deeming notice. 42 C.F.R. § 6.6(a). If a lawsuit alleged that an employee performed negligent medical care *before* the Secretary's deeming notice, the Attorney General could advise the state court under subsection (*l*)(1) that the defendant is *not* deemed an employee for purposes of the acts or omissions alleged in the case. The majority concedes as much. Yet under the majority's view, the Attorney General cannot advise the state court that a defendant is not deemed an employee for acts or omissions that fail to satisfy *another* component of coverage, such as scope of employment or services to covered patients. The one exception, in the majority's view, is the coverage criteria requiring that the services are medical, dental, or surgical. This illogical interpretation finds no support in the language of § 233(*l*)(1). The statute broadly asks whether the defendant is deemed an employee "with respect to the acts or omissions" giving rise to the complaint. It does not parse out a small subset of coverage criteria.

*Friedenberg v. Lane County* does not support the majority's reading of "acts or omissions." 68 F.4th 1113 (9th Cir. 2023). That case considered the scope of § 233 immunity for deemed health care centers and their employees. *Id.* at 1118. But its holding was narrow. It held only that § 233 coverage does not turn on whether the

*plaintiff* in the tort action is the patient. *Id.* at 1126 ("While the claim must result from the performance of [covered] services, the *claimant* need not be a patient nor a recipient of medical or dental care for a deemed PHS employee to invoke § 233 immunity." (emphasis added)). Instead, "PHS employees are entitled to immunity from claims *resulting from providing*" covered services, regardless of the plaintiff. *Id.* at 1127 (citing 42 U.S.C. § 233(a), (g)(1)(B)). *Friedenberg* tells us nothing about the scope of "acts or omissions" in § 233(*l*)(1).

The majority also posits that "Congress did not intend to treat 'actions or omissions' synonymously with 'scope of employment.'" Maj. Op. at 35. True, but that does not justify the majority's myopic reading of "acts or omissions." Whether a doctor is deemed a PHS employee "with respect to the acts or omissions" at issue in the lawsuit includes several components. Scope of employment is only one of them. It thus makes sense that Congress used the broader term "acts or omissions" in the first part of subsection (*l*)(1) to reference the defendant's coverage as a deemed PHS employee, and later used narrower language to reference one component of that coverage.

Third, the majority assumes facts not before us. Even after acknowledging that the relationship between Eisner and the non-federally funded hospital where Dr. Tilley treated Blumberger "is not readily apparent from this record," the majority concludes that Eisner's status as a deemed PHS entity extends to Dr. Tilley's services at the non-PHS hospital. The majority focuses on § 233(*l*)(1)'s reference to "the Secretary," concluding that this must refer only to the Secretary's prospective deeming decision without considering the conduct alleged in the lawsuit. But again, the Secretary's deeming notice is only a precondition to

coverage. The Secretary cannot make a deeming decision "with respect to the acts or omissions that are the subject of such civil action or proceeding" before the lawsuit is even filed. Subsection (*l*)(1) thus requires that the government decide whether the Secretary's prior deeming decision covers the conduct at issue in the complaint. And here, the government decided that it did not. The majority assumes that decision was "incorrect," Maj. Op. at 52, but nothing in the record supports that conclusion.

Fourth, the majority's interpretation is impractical. I agree with the majority that the government's scope of employment decision will often take more than fifteen days. But the Attorney General can, as he did here, appear and advise the court that a decision has not yet been made. And if the government later determines that a defendant's conduct is covered, the Attorney General can remove "at any time before trial" under § 233(c). Although fifteen days is a short window, it was intended to protect covered employees against default judgments if the Attorney General failed to appear. *See* H.R. Rep. 104–398, at 7 (104th Cong., 1st Sess. 1995). It does not suggest that subsection (*l*)(1) should be interpreted to mean the Attorney General can only point to the Secretary's prior deeming notice and cannot consider whether that notice covers the conduct alleged in the lawsuit. Such a strained interpretation would lead to absurd results. It would compel the Attorney General to replace a defendant and remove a case even when the defendant obviously is not covered (*e.g.*, the hypothetical health center dentist moonlighting as a plastic surgeon for private clients).

The majority suggests that nothing stops the Attorney General from advising the state court that the defendant is not covered, which would have "no legal consequence" because he nevertheless must remove the case to federal

court. Maj. Op. at 41. This only highlights the absurdity of the majority's view. The Attorney General's notice under subsection (*l*)(1) that the defendant was deemed a PHS employee with respect to the acts or omissions at issue in the lawsuit "shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that [the defendant] was acting within the scope of their employment or responsibility." If the Attorney General decides that the Secretary's deeming decision extends to the conduct alleged in the lawsuit, he thus necessarily decides that the conduct was within the scope of the defendant's employment. My colleagues in the majority try to blunt the severity of their new rule by suggesting that the Attorney General can always move to remand if the government later concludes that the conduct alleged in the lawsuit was not within the scope of the defendant's employment. But this purported "no harm, no foul" approach suffers from a fatal flaw. Under 28 U.S.C. § 1447(c), a motion to remand must be filed within thirty days and, in many cases, the government will not be able to make a scope of employment decision within that timeframe. In any event, requiring the government to remove a case only to move to remand its own removal is inefficient and impractical.

In sum, § 233(*l*)(1) requires that the Attorney General advise the state court whether the conduct at issue in the lawsuit falls under the defendant's § 233 coverage as a deemed PHS employee. It does not require that the Attorney General merely point to the Secretary's prior deeming notice without considering the facts alleged in the case.

## B. A "presumption of reviewability" does not require removal.

The majority contends that the government's reading of the statute "would effectively insulate the Attorney General's deeming advice to the state court—and the ultimate decision not to certify scope of employment—from judicial review." Maj. Op. at 43. That is neither relevant nor accurate.

For starters, a presumption favoring judicial review of agency decisions does not impact the limited question before us. Section 233 allows doctors to remove in one circumstance: when the Attorney General fails to appear. 42 U.S.C. § 233(*l*)(2). That did not happen here, and we may not rewrite the statute to allow removal based on a general policy favoring judicial review. *E.g.*, *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (stating that it is not the court's role to "soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome"); *Blount v. Rizzi*, 400 U.S. 410, 419 (1971) ("[I]t is for Congress, not this Court, to rewrite the statute."). If Congress intended to grant defendants broad removal rights to seek federal court review of coverage determinations, it would have said so. Indeed, in the Westfall Act, Congress expressly granted federal employees the right to "petition the court to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(3). No such language exists in § 233.

The majority's reliance on *De Martinez v. Lamagno*, 515 U.S. 417 (1995) is thus misplaced. There, the Supreme Court considered whether the Westfall Act allowed a plaintiff to seek court review of the government's scope of employment determination after the government certified that a defendant

was acting within the scope of his employment, substituted in as the defendant, then asserted that the United States was immune. *Id.* at 420. The Court noted that the Westfall Act's provisions "work together to assure that" scope of employment disputes "may be resolved in federal court," including the provision "specifically allow[ing] employees whose certification requests have been denied by the Attorney General[] to contest the denial in court." *Id.* at 431 (citing 28 U.S.C. § 2679(d)(3)).[4] And when discussing the policy favoring judicial review, the Court focused on the dispositive nature of the government's scope of employment determination. *Id.* at 424 (explaining that, when a government official's decision "is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable"). Because the United States was immune from suit, its certification that the defendant was acting within the scope of his employment defeated the plaintiff's claims.

This reasoning does not apply here. The Westfall Act, unlike § 233, has explicit language allowing a defendant to petition for federal court review. *See Hui v. Castaneda*, 559 U.S. 799, 807 (2010) (finding it "telling" that Congress used different language in the Westfall Act than in § 233); *O'Brien v. United States*, 56 F.4th 139, 146 (1st Cir. 2022) ("The differences between the Westfall Act and [§ 233] . . . are real, not simply technical."). We should "presume that

---

[4] The majority posits that, because *De Martinez* was decided six months before § 233(*l*)(1) was enacted, "Congress could well have understood that federal courts would review the scope of employment determination unless Congress specified otherwise." Maj. Op. at 49. That is pure speculation, and it ignores that the Court expressly relied on the Westfall Act's provision for federal court petitions, yet Congress declined to enact a similar provision in § 233.

such drafting decisions are deliberate." *United States v. Alexander*, 725 F.3d 1117, 1121 (9th Cir. 2013). And the government's determination that Dr. Tilley is not covered under § 233 would not dispose of Blumberger's case. She can still proceed against Dr. Tilley and the other defendants in state court.

What's more, Dr. Tilley is not left without any avenue for judicial review of the government's coverage decision. He could seek review in state court, or he could file an APA action in federal court challenging the government's negative coverage determination. Indeed, the D.C. Circuit has held that doctor defendants may file an APA claim challenging the government's negative coverage decision, in part because "Congress almost certainly did not intend for the FSHCAA removal provisions of § 233(*l*)(2) to provide a review procedure for a negative deeming determination by the Secretary." *El Rio Santa Cruz*, 396 F.3d at 1271. In short, Dr. Tilley may have other ways to challenge the government's coverage decision, but he cannot remove the case to federal court under § 233.

\*          \*          \*

Section 233 allows defendants to remove only if the Attorney General fails to appear within fifteen days. The Attorney General timely appeared, so Dr. Tilley's removal was improper. We cannot cure that improper removal by rewriting the statute to require the Attorney General to remove the case. Nothing in § 233 requires the Attorney General to remove, and for reasons we cannot know on this record, the government decided that Dr. Tilley was *not* "deemed" a PHS employee "with respect to" medical services he performed at a non-federally funded hospital. The majority oversteps by blindly rejecting the

government's decision and compelling removal. In doing so, the majority creates a per se removal rule for all PHS employees going forward, regardless of whether they were acting in the scope of their employment. Such a per se removal rule is contrary to the plain language of § 233 and, despite the potential for gamesmanship by the government under the statutory language as written, it is for congress not the courts to amend the statute if it wishes to avoid the unintended consequences of its law. I respectfully dissent.